## UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

**DACO INVESTMENTS, LLC, d/b/a**
**OUPAC FINANCIAL SERVICES, ET AL.**

**CASE NO.  6:22-CV-01444**

**VERSUS**

**JUDGE ROBERT R. SUMMERHAYS**

**MAGISTRATE JUDGE DAVID J. AYO**

**UNITED STATES SMALL**
**BUSINESS ADMINSTRATION, ET AL.**

### MEMORANDUM RULING

The present matters before the Court are cross Motions for Summary Judgment filed by Plaintiffs [ECF No. 24] and Defendants[1] [ECF No. 35]. Both motions are opposed.

## I.
### BACKGROUND

Plaintiffs in this case include individual businesses engaged in the business of lending money.[2] These plaintiffs, together with their trade association, the American Financial Services Association ("AFSA"), challenge certain actions by the Small Business Association ("SBA") in connection with its implementation of the Paycheck Protection Program ("PPP") created by the Coronavirus Aid, Relief, and Economic Security Act of 2020 ("CARES Act" or "the Act"). In general, the SBA is authorized to make business loans to eligible small business concerns, under Section 7(a) of the Small Business Act, codified at 15 U.S.C. § 636(a).[3] SBA regulations establish

---

[1] United States Small Business Administration ("SBA"); Isabella Casillas Guzman, in her official capacity as Administrator of the SBA; Janet Yellen, in her official capacity as Secretary of the Treasury of the United States; and the United States of America.
[2] DACO Investments, LLC, d/b/a OUPAC Financial Services; Westside Credit Corporation, Inc.; Motorists Acceptance Corporation, d/b/a Saddleback Acceptance Corporation; Challenge Financial Services; Eagle Financial Services, Inc.; Sunrise Finance Company; TEBO Financial Services, Inc.; Time Investment Company, Inc.; Friendly Finance Corporation; Pronto Finance, Inc.; Veros Credit, LLC; Credit Concepts, Inc.; Moore Finance Company, Inc.; New Southern Loans, Inc.; Money Lenders Finance Co.; First Financial Loans, Inc.; Wagner Financial Services, Inc.; Southern Loans, Inc.; Southland Finance Co.; Deep South Financial Services, Inc.; Carvant Financial, LLC; and Vehicle Acceptance Corporation ("VAC") (collectively, "individual business Plaintiffs").
[3] ECF Nos. 24-2 at 3-6; 35-2 at 1-10.

eligibility requirements for SBA small business loans, including size, location, and demonstrated need for credit.[4]  Whether a business concern classifies as "small" depends on the industry in which it operates, and is determined by the amount of economic activity conducted by the business and/or the number of its employees.[5] The employee cap for small businesses ranges from 125 to 1,500 employees, depending on the industry.[6] SBA regulations also establish that certain business are categorically ineligible for an SBA business loan.[7] Among other categories, 13 C.F.R. § 120.110 ("Section 120.110") states that "[n]on-profit businesses"[8] and "[f]inancial businesses primarily engaged in the business of lending, such as banks, financing companies, and factors…"[9] (hereafter referred to as "financial businesses") are not eligible for SBA business loans.  These provisions were consolidated into SBA regulations governing the Section 7(a) loan program in 1996.[10]

In 2020, Congress passed, and the President signed, the CARES Act which, *inter alia*, created the PPP.[11] The CARES Act directed the SBA to administer the PPP under the agency's pre-existing Section 7(a) small business loan program, and provided that PPP loans could be forgiven if used for certain authorized purposes.[12] In this regard, the CARES Act states that "[e]xcept as otherwise provided in [the PPP], the [SBA] may guarantee covered loans *under the same terms, conditions, and processes* as a loan made under this subsection [Section 7(a)]."[13]

The CARES Act, however, also specifically expanded eligibility for PPP loans compared to traditional Section 7(a) loans. Specifically, the Act provides that "IN GENERAL" (capitalization in original) eligibility for PPP loans extends, "in addition to small business

---

[4] 13 C.F.R. § 120.100.
[5] 13 C.F.R. § 121.201.
[6] 13 C.F.R. § 121.201.
[7] 13 C.F.R. § 120.110.
[8] 13 C.F.R. § 120.110(a).
[9] 13 C.F.R. § 120.110(b).
[10] Business Loan Programs, 61 FR 3226-01.
[11] CARES Act, Pub. L. No. 116-136, 134 Stat. 281. The PPP is codified at 15 U.S.C. § 636(a)(36).
[12] *Id.*
[13] CARES Act, 134 Stat. 287; 15 U.S.C. § 636(a)(36)(B) (emphasis added).

concerns, [to] any business concern, nonprofit organization, veterans organization, or Tribal business concern," so long as the concern employed not more than either 500 employees (or the standard employment level in the applicable industry).[14] This language expands eligibility to enterprises that employ up to 500 employees in certain industries where the standard would usually be lower. Importantly, the CARES Act specifically provided that non-profit organizations—which are ineligible for traditional Section 7(a) small business loans—were eligible for PPP loans.[15]

The CARES Act directed the SBA to promulgate regulations implementing the PPP within fifteen (15) days of enactment, "without regard to the notice requirements under section 553(b) of [T]itle 5, United States Code."[16] On April 15, 2020, the SBA issued an Interim Final Rule ("First IFR"), which Plaintiffs refer to as the "Exclusion Rule," detailing the SBA's interpretation of the PPP provisions in the CARES Act and how the SBA would administer the new program.[17] The First IFR stated that the PPP is a "new [Section] 7(a) program."[18] The First IFR declared SBA's understanding that "[t]he intent of the [CARES] Act is that SBA provide relief to America's small businesses expeditiously … by giving all lenders delegated authority and streamlining the requirements of the regular [Section] 7(a) loan program."[19] As part of that "streamlining," the First IFR stated that businesses identified in Section 120.110 as ineligible for traditional Section 7(a) loans were *also* not eligible for PPP loans, "except that nonprofit organizations authorized under the [CARES] Act are eligible."[20]

On April 28, 2020, the SBA issued another Interim Final Rule ("Second IFR") designed to "supplement[] previous regulations and guidance on several important, discrete issues" with

---

[14] CARES Act, 134 Stat. 288; 15 U.S.C. § 636(a)(36)(D)(i).
[15] *Id.*
[16] CARES Act, Sec. 1114, 134 Stat. at 312; 15 U.S.C. § 9012.
[17] Business Loan Program Temporary Changes; Paycheck Protection Program, 85 FR 20811-01.
[18] *Id.* at III(1).
[19] *Id.*
[20] *Id.* at III(2)(c).

respect to the PPP.[21] Among other things, the Second IFR created exceptions to Section 120.110 for government-owned hospitals and legal gambling businesses, rendering them eligible for PPP loans despite the fact that they are barred from accessing traditional Section 7(a) loans under Section 120.110.[22] The Second IFR explained that the SBA Administrator determined that the exceptions for hospitals and gambling businesses were appropriate to, respectively, "effectuate the purposes of the CARES Act" and to be "more consistent with the policy aim of making PPP loans available to a broad segment of U.S. businesses."[23]

Between April 6 and June 25, 2020, the individual business Plaintiffs applied for "first-draw" PPP loans (i.e., loans authorized by the PPP as enacted in the CARES Act) and were approved.[24] The individual business Plaintiffs later applied for forgiveness of those loans, asserting they were used for the limited purposes for which forgiveness was allowed. The SBA denied each request for forgiveness, determining that the individual business Plaintiffs had not been eligible to receive PPP loans because they are "[f]inancial businesses primarily engaged in the business of lending," under Section 120.110(b).[25] The individual business Plaintiffs appealed their denials to the SBA Office of Hearing and Appeals ("OHA").[26] OHA affirmed the denial as to each individual business Plaintiff except VAC, whose appeal remained pending as of the filing of the instant motions.[27]

On December 27, 2020, the "Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act" ("EAA") was enacted, as part of the Consolidated Appropriations Act, 2021.[28]

---

[21] Business Loan Program Temporary Changes; Paycheck Protection Program—Requirements—Promissory Notes, Authorizations, Affiliation, and Eligibility, 85 FR 23450-01.
[22] Id. at III(2)(c)-(d).
[23] Id.
[24] ECF Nos. 24-2 at 10-18; 35-2 at 11.
[25] Id.
[26] ECF Nos. 24-2 at 10-18; 35-2 at 12.
[27] Id.
[28] Pub. L. No. 116-120, 134 Stat. 1182, Division N, Title III.

Among other things, the EAA authorized the SBA to make a second round of PPP loans, referred to as "second-draw" loans.[29] The EAA provided that businesses listed in Section 120.110—i.e., businesses that are ineligible for traditional Section 7(a) business loans—were ineligible for second-draw PPP loans, except for non-profit businesses.[30]

Plaintiffs filed the present action, asserting that (1) SBA's adoption of the First IFR—particularly SBA's application of the eligibility exclusions of Section 120.110 to PPP first-draw loans or forgiveness—violated the CARES Act, (2) SBA's adoption of the First IFR was arbitrary and capricious in violation of the Administrative Procedures Act ("APA"), and (3) SBA acted arbitrarily and capriciously in removing certain categories of businesses from the list of ineligible businesses.[31] Defendants argue the First IFR and denials of forgiveness were proper.

Plaintiffs also assert that while the SBA acted arbitrarily and capriciously when it denied their requests for forgiveness of PPP loans on the basis of the "business of lending" exclusion, but granted forgiveness to other concerns in the business of lending money.[32] In support of this claim, Plaintiffs offer a declaration by Kalen Richey ("Richey Declaration"), purportedly based on analysis of publicly available SBA information.[33] Defendants dispute that the SBA has treated similarly situated financial companies differently, and offer that, for example, the companies who received forgiveness might have satisfied one of several long-standing exceptions to Section

---

[29] *Id.* at Sec. 311; "Paycheck Protection Program Second Draw Loans" codified at 15 U.S.C. § 636(a)(37).

[30] 15 U.S.C. § 636(a)(37)(A)(iv)(III)(aa). The EAA initially made all businesses identified in Section 120.110 ineligible for PPP second-draw loans, except for businesses described by Section 120.110(a) (non-profit businesses) and 120.110(k) ("[b]usinesses principally engaged in teaching, instructing, counseling or indoctrinating religion or religious beliefs"). Section 120.110(k) was removed and reserved in 2022. Regulatory Reform Initiative: Streamlining and Modernizing the 7(a), Microloan, and 504 Loan Programs To Reduce Unnecessary Regulatory Burden, 87 FR 38900-01.

[31] ECF No. 18 (Amended Complaint) at 3-4.

[32] ECF No. 24-1 at 27-29.

[33] ECF No. 27.

120.110.[34] Defendants offer declarations by Dianna Seaborn and Martin Andrews disputing the analysis and conclusions of the Richey Declaration.[35]

Finally, Plaintiffs challenge the First IFR on the grounds that it was based on an unconstitutional delegation of legislative power to the SBA and that it violates the "major questions" doctrine.[36]

In their complaint, Plaintiffs seek a judgment declaring that (1) the First IFR violates the CARES ACT; (2) the SBA adoption of the First IFR was arbitrary and capricious; (3) the SBA's enforcement of the eligibility exclusion for lending businesses was discriminatory; (4) the SBA's removal of certain businesses from the list of businesses ineligible to receive PPP loans was arbitrary and capricious; and (5) the SBA's denial of Plaintiffs' requests to forgive their PPP loans under the First IFR was arbitrary and capricious. Plaintiffs also seek a judgement enjoining the SBA from (1) enforcing the First IFR nationwide; and (2) denying an application to forgive a PPP loan based on the "business of lending" eligibility exclusion. Finally, Plaintiffs seek a judgment for "any and all payments … made on PPP loans" to any business denied forgiveness on the basis of being a financial business primarily engaged in lending, including to Plaintiffs, as well as an award of costs and attorney fees.[37] Plaintiffs and Defendants then filed the instant Motions for Summary Judgement.[38]

---

[34] ECF No. 35-1 at 47-49.
[35] ECF No. 35-3.
[36] ECF No. 24-1 at 22-24.
[37] ECF No. 18 (Amended Complaint) at 45-46.
[38] ECF No. 24 at 25; ECF No. 35. Defendants initially contested AFSA's standing but withdrew that objection in response to declarations submitted on behalf of AFSA regarding injuries to certain of its members. ECF No. 42 at 19 n. 15.

## II.
### SUMMARY JUDGMENT STANDARD

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought."[39] "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[40] "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party."[41] As summarized by the Fifth Circuit:

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.[42]

When reviewing evidence in connection with a motion for summary judgment, "the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached."[43] "Credibility determinations are not part of the summary judgment analysis."[44] Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the

---

[39] Fed. R. Civ. P. 56(a).

[40] *Id.*

[41] *Quality Infusion Care, Inc. v. Health Care Service Corp.*, 628 F.3d 725, 728 (5th Cir. 2010).

[42] *Lindsey v. Sears Roebuck and Co.,* 16 F.3d 616, 618 (5th Cir. 1994) (internal citations omitted).

[43] *Roberts v. Cardinal Servs., Inc.*, 266 F.3d 368, 373 (5th Cir. 2001); *see also Feist v. Louisiana, Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (court must view all facts and evidence in the light most favorable to the non-moving party).

[44] *Quorum Health Resources, L.L.C. v. Maverick County Hosp. Dist.*, 308 F.3d 451, 458 (5th Cir. 2002)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

existence of an element essential to that party's case, and on which that party will bear the burden of proof."[45]

## III.
### JURISDICTIONAL AND PROCEDURAL ISSUES RAISED IN THE DEFENDANTS' MOTION

In their Motion for Summary Judgment, Defendants raise a number of jurisdictional and procedural issues with respect to Plaintiffs' claims. Defendants contend that (1) Plaintiff VAC must be dismissed from this action because there has been no final agency action on its claims, so VAC has not exhausted administrative remedies; (2) Plaintiffs have not stated a claim against Secretary of the Treasury Janet Yellen; and (3) injunctive relief against the SBA is statutorily barred. The Court will address each argument in turn.

### A.    This Court Lacks Jurisdiction Over VAC's Claims.

Defendants argue that Plaintiff VAC must be dismissed from this action because there has been no final agency action on its claims, so VAC has not exhausted administrative remedies, as required. The parties agree that, while VAC appealed the SBA's denial of forgiveness to the OHA, the agency appellate body had not issued a final decision as of the filing of the instant motions. Plaintiffs do not dispute that VAC's appeal remained pending when they filed suit, but argue that VAC does not have to exhaust its administrative remedies before suing in federal court because the OHA's decision is a foregone conclusion.[46]

Under the APA, federal courts may only review final agency actions.[47] An agency action is not final if a statute or rule requires an administrative appeal or exhaustion of other administrative remedy prior to filing suit.[48] The Fifth Circuit has treated exhaustion as

---

[45] *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004) (alterations in original) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).
[46] ECF No. 38 at 38.
[47] 5 U.S.C. § 704.
[48] *Amin v. Mayorkas*, 24 F.4th 383, 389 (5th Cir. 2022).

jurisdictional, though that conclusion has come under recent scrutiny.[49] Whether or not exhaustion remains jurisdictional is immaterial, however, because exhaustion is required by applicable regulation in the present case. Appeals of SBA decisions regarding PPP applications are governed by 13 C.F.R. § 134.1201, *et seq.* These regulations provide that "[a]n appeal to OHA is an administrative remedy that must be exhausted before judicial review of a final SBA loan review decision may be sought in a Federal district court."[50] Plaintiffs offer no authority to support an exception to this requirement when the party seeking review presumes it will lose before the agency appeal body. Therefore, the OHA must issue a final decision prior to seeking judicial review of an SBA decision.

Accordingly, the claims of Plaintiff VAC are DISMISSED WITHOUT PREJUDICE to being refiled once a final OHA decision has been rendered as to its appeal.

### B.      Claims Against Secretary Yellen.

Plaintiffs name as a defendant Janet Yellen in her official capacity as Secretary of the Department of the Treasury.[51] However, the Plaintiffs' Amended Complaint and summary judgment arguments do not allege any conduct by Secretary Yellen or any employee of the Treasury Department which would provide a basis for liability.  The only mention of conduct by the Treasury Department is an allegation that the First IFR was issued by the SBA "in conjunction with the Department of the Treasury."[52] Plaintiffs obliquely suggest that the Court can enjoin the Department of the Treasury to reimburse Plaintiffs for repayments made to the SBA.[53] However, given the lack of any allegations of misconduct with respect to the Secretary or any Treasury

---

[49] *Id.* at n. 2 (calling that doctrine into question in light of recent United States Supreme Court precedent).
[50] 13 C.F.R. § 134.1201(d).
[51] ECF No. 18 at ¶ 34.
[52] ECF No. 35-2 at 5.
[53] ECF No. 38 at 34-35.

Department employee, it appears that "[t]he Treasury Secretary's presence or absence here would have no impact on this ruling."[54]

Accordingly, any claims against Secretary Yellen are DISMISSED.

### C.  Injunctive Relief Against the SBA Is Prohibited.

Broadly, Plaintiffs request that the Court (1) enter a declaratory judgment that the SBA unlawfully denied them forgiveness, (2) enjoin the SBA nationwide to do and not to do certain things, and (3) vacate the First IFR. As recognized by the Fifth Circuit, 15 U.S.C. § 634(b)(1) explicitly prohibits injunctive relief against the SBA or its Administrator.[55] Accordingly, Defendants' motion for summary judgment is GRANTED IN PART to the extent that any claim for injunctive relief against the SBA and/or its Administrator, whether nationwide or geographically restricted, is DISMISSED.

Defendants further argue that the statutory bar against injunctive relief extends also to vacatur, on the grounds that vacatur is a species of injunctive relief.[56] The Fifth Circuit has held that a statutory bar against injunctive relief does not automatically also preclude vacatur, because of the "'meaningful differences' between injunctions and vacatur."[57] Vacatur is a "less drastic remedy"[58] than injunctive relief, and vacatur "neither compels nor restrains further agency decision-making" but only acts to "re-establish the status quo absent the unlawful agency action."[59] Therefore, the Small Business Act's prohibition against ordering injunctive relief against the SBA

[54] *Al-Rob Corp. v. United States Small Bus. Admin.*, No. 8:20-CV-1497-WFJ-JSS, 2021 WL 288968, at *2 (M.D. Fla. Jan. 28, 2021), *appeal dismissed sub nom. Bantock Enterprises, LLC v. Sec'y of Treasury of United States*, No. 21-10406-HH, 2021 WL 1904332 (11th Cir. Apr. 9, 2021).
[55] *Shumaker v. Guzman*, No. 22-40409, 2023 WL 1434276, at *2 (5th Cir. Feb. 1, 2023)("the Small Business Act bars injunctive relief against the Administrator or his property…[t]his court has explicitly held that there is an absolute statutory bar to any injunctive relief against the SBA.") (citing *In re Hidalgo Cnty. Emergency Serv. Found.*, 962 F.3d 838, 840 (5th Cir. 2020)).
[56] ECF No. 35-1 at 48-49.
[57] *Texas v. United States*, 50 F.4th 498, 528 (5th Cir. 2022) (citing *Texas v. United States*, 40 F.4th 205, 219 (5th Cir. 2022), *cert. granted sub nom. United States v. Texas*, 143 S. Ct. 51, 213 L. Ed. 2d 1138 (2022)).
[58] *Id.*
[59] *Texas v. United States*, 40 F.4th at 220.

does not preclude this Court from vacating the First IFR if that rule is found unlawful under the APA.

Accordingly, Defendants' motion is DENIED IN PART on those grounds.

**IV.**

**PLAINTIFFS' CHALLENGES TO THE SBA'S FIRST IFR**

**A.  Did the SBA Violate the CARES Act By Incorporating the "Business of Lending" Eligibility Restriction Into the PPP?**

The Court next addresses Plaintiffs' claims that the SBA violated the CARES Act by incorporating the eligibility restrictions of Section 120.110—including the "business of lending" exclusion—into the First IFR, thereby applying those restrictions to PPP loans.[60] Plaintiffs point to the language in the CARES Act providing that PPP loans shall be made available to "any business concern" with fewer than 500 employees. Plaintiffs read the term "any business concern" broadly to mean that a business concern is eligible for a PPP loan if they meet the 500-employee threshold, regardless of whether any eligibility exclusion in Section 120.110 applies. Given this language, Plaintiffs argue that the SBA violated the CARES Act by incorporating the "business of lending" eligibility exclusion from Section 120.110(b) into the First IFR and, as a result, making Plaintiffs ineligible for PPP loans.[61] Defendants counter that the CARES Act authorizes the SBA to guarantee PPP loans under the same "terms, conditions, and processes" of the pre-existing Section 7(a) loan program to the extent they are consistent with the Act. Defendants contend that the "any business concern" language in the CARES Act refers to the Act's increase in the employee number eligibility threshold for PPP loans versus the threshold for traditional small business Section 7(a) loans. Accordingly, the CARES Act grants the SBA discretion to adopt the other, pre-

---

[60] ECF No. 24-1 at 15-22.
[61] *Id.*

existing eligibility requirements in Section 120.110 into the PPP unless otherwise prohibited by the Act.[62]

The APA provides that a "reviewing court shall ... hold unlawful and set aside agency action ... found to be—(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law ... [or] (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."[63] Courts generally apply the two-step *Chevron* framework in determining whether an agency's action exceeded its statutory authority.[64] Under this framework, a court must first exhaust the traditional tools of statutory construction to determine whether "Congress has directly spoken to the precise question at issue;" if it has, the inquiry ends and the court must "give effect to the unambiguously expressed intent of Congress."[65] An agency's action that is inconsistent with the unambiguous text of the statute must be set aside. If the statute is silent or ambiguous as to the legality of the agency's action, a court must proceed to step two of the Chevron framework and determine whether the agency's interpretation of the statute "is based on a permissible construction of the statute."[66] "If a statute is ambiguous, and if the implementing agency's construction [of the statute] is reasonable," a court generally defers to the agency's interpretation of the statute.[67]

The Second and Eleventh Circuits have directly addressed the statutory authority of the SBA to impose eligibility restrictions other than size on the PPP loan program and the meaning of the "any business concern" clause in the CARES Act.[68] The Sixth Circuit also addressed the

---

[62] ECF No. 35-1 at 18-19.

[63] 5 U.S.C. § 706(2); *Texas v. United States*, 809 F.3d 134, 178 (5th Cir. 2015).

[64] *Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–44 (1984); *Huawei Techs. USA, Inc. v. Fed. Commc'ns Comm'n*, 2 F.4th 421, 433–34 (5th Cir. 2021).

[65] *Chevron*, 467 U.S. at 842–43

[66] *Alenco Commc'ns, Inc. v. FCC*, 201 F.3d 608, 619 (5th Cir. 2000) (quoting *Chevron*, 467 U.S. at 843, 104 S.Ct. 2778)

[67] *Acosta v. Hensel Phelps Constr. Co.*, 909 F.3d 723, 730 (5th Cir. 2018).

[68] *In re Gateway Radiology Consultants, P.A.*, 983 F.3d 1239 (11th Cir. 2020); *Pharaohs GC, Inc. v. United States Small Bus. Admin.*, 990 F.3d 217 (2d Cir. 2021).

CARES Act's "any business concern" language, but in the context of a motions panel decision on whether to issue a stay of the district court's preliminary injunction.[69]

In *In re Gateway Radiology Consultants, P.A.*, the Eleventh Circuit addressed whether SBA's exclusion of bankruptcy debtors from eligibility for PPP loans violated the CARES Act.[70] Prior to the CARES Act, the SBA's Section 7(a) loan program was subject to the statutory requirement that loans issued under the program be "of such sound value or so secured as reasonably to assure repayment ...."[71] The SBA implemented this sound value rule in 13 C.F.R. 120.150 by requiring that a Section 7(a) loan applicant be "creditworthy" and the loan be "sound as to reasonably assure repayment."[72] The SBA also considers a borrowers' bankruptcy status or history as part of an application.[73] The SBA incorporated these "sound value" requirements when it implemented the PPP loan program under Section 7(a). The plaintiff in *Gateway*—a debtor in bankruptcy—argued that the "any business" language of the CARES Act precluded the SBA from applying the "sound value" requirement to the PPP loan program.[74] Like the Plaintiffs in the present case, the plaintiff in *Gateway* read the "any business concern" language in the CARES Act broadly and essentially argued that the only permissible eligibility requirement under the Act is an employee size requirement—"any business concern ... shall be eligible [for a PPP loan] if it employs not more than the greater of ... 500 employees ...."[75] The Eleventh Circuit considered the language in the CARES Act placing the PPP loan program within the pre-existing framework of the Section 7(a) loan program, including the detailed rules and lending criteria promulgated by

---

[69] *DV Diamond Club of Flint, LLC v. Small Bus. Admin.*, 960 F.3d 743 (6th Cir. 2020).
[70] 983 F.3d 1239.
[71] *Id.* at 1248 (quoting 15 U.S.C. § 636(a)(6)).
[72] 13 C.F.R. 120.150.
[73] 13 C.F.R. 120.10.
[74] *Gateway*, 983 F.3d at 1246-47.
[75] 15 U.S.C. § 636(a)(36)(D)(i)(I)-(II).

the SBA in connection with that program.[76] The court also noted that the CARES Act expanded eligibility with respect to some borrowers but left other pre-existing eligibility and lending requirements intact, such as the "sound value" requirement.[77] The court concluded that Congress had granted the SBA discretion to adopt the pre-existing Section 7(a) eligibility and lending criteria into the PPP, as long as the agency's actions did not conflict with the CARES Act.[78]

The *Gateway* court further held that the CARES Act's "any business concern" language did not preclude the SBA from adopting the "sound value" lending restriction.[79] The court reasoned that it would "be illogical to conclude that this subsection of the CARES Act sets size as the one and only requirement for PPP eligibility" given that "other sections of the CARES Act waive or relax for PPP loans other § 7(a) eligibility requirements."[80] According to the court, "[i]f the sole eligibility requirement was size, then those other provisions would be pointless."[81] The court further explained that:

> [T]here is a more reasonable and obvious reading of the revision of § 7(a) size requirements for PPP loan purposes. That revision simplifies the detailed and cumbersome size requirements set forth in 13 C.F.R. § 121.201 by focusing only on the number of employees, and it relaxes the size requirement for businesses in many industries. It does not prohibit the SBA from establishing other, non-size related eligibility criteria.[82]

The court concluded that, while Congress did not expressly address the "sound value" eligibility requirement, it granted the SBC discretion to adopt eligibility requirements other than number of employees and that, under *Chevron*'s second step, the SBA's interpretation of the CARES Act was reasonable.

---

[76] *Gateway*, 983 F.3d at 1256 ("[T]he PPP was not created as a standalone program but was added into the existing § 7(a) program, which subjects it to existing conditions and regulations, as well as existing SBA authority.").
[77] *Id.* at 1258.
[78] *Id.* at 1257.
[79] *Id.* at 1258.
[80] *Id.*
[81] *Id.*
[82] *Id.*

In *Pharaohs GC, Inc. v. United States Small Bus. Admin.*, the Second Circuit addressed the restriction in Section 120.110(p) excluding businesses that "[p]resent live performances of a prurient sexual nature" from eligibility for loans under Section 7(a)—and, hence, the PPP.[83] As in the present case, the plaintiff in *Pharaohs* argued that the phrase "any business concern" in the CARES Act prevented the SBA from adopting any non-size-related eligibility restrictions in administering the PPP. The court rejected the argument, noting that Congress directed that the PPP be administered within the pre-existing Section 7(a) program, and that "the CARES Act unambiguously gives the Administrator discretion to adopt the longstanding 'terms, conditions, and processes' of the 7(a) program," including the eligibility requirements of §120.110.[84] According to the court, the plaintiff's reading of the CARES Act's "any business concern" language to mean that "every business concern" that fell under the 500-employee threshold was eligible for the PPP was "not tenable" because it would render numerous provisions of the Act that modify pre-existing eligibility and underwriting requirements superfluous.[85] Rather, like the Eleventh Circuit in *Gateway*, the court concluded that this language "simply rais[ed] the employee threshold defining eligibility for small business relief to 500 [employees]."[86]

The Sixth Circuit came to a different conclusion in *DV Diamond Club of Flint, LLC v. SBA*.[87] Like the plaintiff in *Pharaohs*, the plaintiff in *DV Diamond Club* argued that the CARES Act's "any business concern" language should be construed broadly to bar the SBA from incorporating the Section 120.110(p) exclusion for businesses offering "live performances of a prurient sexual nature" into the PPP. The district court agreed and entered a preliminary injunction against the SBA. A motions panel of the Sixth Circuit similarly agreed with the plaintiff's

---

[83] 990 F.3d 217.
[84] *Id.* at 227-28.
[85] *Id.*
[86] *Id.*
[87] 960 F.3d 743.

15

interpretation of the statute and concluded that the plaintiff would likely prevail on the question of whether the First IFR violated the CARES Act.[88] The panel noted that the Act's "specification that 'any business concern' is eligible, so long as it meets the size criteria, is a reasonable interpretation."[89] By using this broad language, "Congress made clear that the SBA's longstanding ineligibility rules are inapplicable given the current circumstances."[90] Accordingly, the motions panel declined to stay the district court's preliminary injunction pending appeal.[91]

Turning to the present case, the CARES Act does not expressly address the SBA's authority to exclude categories of business, such as businesses that primarily lend money, from the PPP. However, the Court agrees with the holdings of *Pharaohs* and *Gateway* that the Act does not preclude the SBA from applying the pre-existing eligibility regulations of the Section 7(a) loan program to the PPP, as long as those eligibility restrictions do not conflict with the Act. In contrast, the reasoning of the Sixth Circuit panel in *DV Diamond Club* is not persuasive for the reasons discussed below.

First, prior to the CARES Act, Congress had empowered the SBA to establish rules and regulations governing the Section 7(a) small business loan program. Pursuant to that authority, the SBA adopted rules and regulations, including the long-standing eligibility exclusions contained in 13 C.F.R. §120.110.[92] Instead of creating an entirely new loan program, the CARES Act placed the PPP under the pre-existing Section 7(a) loan program by providing that PPP loans would be allowed "under the same *terms, conditions, and processes* as a loan made under … [Section 7(a)]

---

[88] *Id.* at 746-47.
[89] *Id.*
[90] Id.
[91] *Id.*; In *DV Diamond Club,* the lower court also determined that 15 U.S.C. § 634(b)(1) did not bar injunctive relief against the SBA based upon (1) a prior decision of a Wisconsin district court, which appeared to construe setting aside an unlawful agency action as a type of injunction and (2) the fact that the United States and the Secretary of the Treasury were also sued, and neither claimed immunity from injunctive relief. As discussed above, however, the Court is bound by Fifth Circuit precedent and statute which prohibits injunctions against the SBA, and Plaintiffs assert no basis for liability against the Secretary of the Treasury.
[92] *Gateway*, 983 F.3d at 1248 (11th Cir. 2020)(quoting 15 U.S.C. §§ 633(d), 634(b)(6), 634(b)(7)).

16

… [e]xcept as otherwise provided."[93] Because Congress expressly legislated against the backdrop of an existing statutory and regulatory scheme, it may be presumed that Congress was aware of the pre-existing rules and regulations of the Section 7(a) program—including Section 120.110—when it placed the PPP under Section 7(a).[94] Yet, Congress did not express its intent in the CARES Act to include borrowers typically excluded by Section 120.110, except for non-profit businesses. This "strongly suggests that Congress deliberately chose not to change the Administrator's statutory discretion to exclude businesses, other than those it expressly identified in the CARES Act."[95] Unlike *Pharaohs* and *Gateway*, the *DV Diamond Club* panel opinion did not consider Congress' placement of the PPP under the pre-existing Section 7(a) loan program or the language of the CARES Act granting the SBA discretion to offer PPP loans under the same terms, conditions, and processes as the Section 7(a) loan program.[96]

Plaintiffs' expansive interpretation of the "any business concern" language in the CARES Act is not consistent with the text and context of the Act's PPP provisions. Plaintiffs' reading would expand PPP eligibility to all business concerns that meet the 500-employee threshold. However, because "other sections of the CARES Act waive or relax for PPP loans other [Section] 7(a) eligibility requirements," Plaintiffs' interpretation would render these provisions

---

[93] 15 U.S.C. § 636(a)(36)(B)(emphasis added). The parties also debate whether the words "terms," "conditions," and "processes" from the provision of the CARES Act authorizing the SBA to offer PPP loans "under the same terms, conditions, and processes as" Section 7(a) loans can be fairly construed to include the eligibility criteria of Section 120.110. Plaintiffs contend that the dictionary definitions of these terms do not encompass eligibility exclusions, such as the "business of lending" exclusion. However, given Congress' direction that PPP loans be administered under the pre-existing Section 7(a) loan program, the Court agrees with the *Pharaohs* court that the phrase "same terms, conditions, and processes" as the Section 7(a) program is broad enough to grant the SBA authority to adopt the eligibility exclusions of Section 120.110 for the PPP. 990 F.3d at 226-28.

[94] *Pharaohs*, 990 F.3d at 227.

[95] *Id.*

[96] The CARES Act grants the SBA discretion by using the term "may" with respect to its authority to implement the PPP under the pre-existing Section 7(a) program: "[T]he [SBA] *may* guarantee covered loans under the same terms, conditions, and processes as a loan made under this subsection [Section 7(a)]." CARES Act, 134 Stat. at 287, 15 U.S.C. § 636(a)(36)(B)(emphasis added); *Gateway*, 983 F.3d at 1257 (noting that the CARES Act provides that the SBA "may guarantee covered loans under the same terms, conditions, and processes as [§ 7(a)]," and that the "use of the permissive word 'may' vests the SBA with discretionary authority.").

superfluous.[97] Accordingly, Plaintiffs' interpretation contravenes the rule of construction that "a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant."[98] Both *Pharaohs* and *Gateway* considered this rule of construction and the effect of an expansive reading of the "any business concern" language; the motions panel in *DV Diamond Club* did not.

Congress' passage of the EAA also undercuts Plaintiffs' expansive reading of the "any business concern" language. The EAA expressly adopts the eligibility exclusions of Section 120.110 but made an exception for faith-based businesses (Section 120.110(k)); critically, the CARES Act did not create an exception for faith-based businesses for *first-draw* PPP loans. If, as Plaintiffs argue, the "any business concern" language of the CARES Act imposes the only eligibility requirement for the PPP, this express exception would be superfluous. Moreover, the fact that Congress selectively expanded PPP eligibility for certain borrowers and not others shows that "Congress knew how to suspend or render inapplicable to PPP loans the traditional § 7(a) requirements when it wanted to do so;"[99] yet Congress did not carve-out an exception for financial businesses in the CARES Act or the EAA.

Defendants also argue that Congress' incorporation of the Section 120.110 exclusions for second-draw PPP loans under the EAA confirms that the SBA's adoption of the exclusion is consistent with the CARES Act.[100] "[A]n agency's interpretation of a statute may be confirmed or ratified by subsequent congressional failure to change that interpretation."[101] Plaintiffs respond that the difference in language between the CARES Act and the EAA shows that Congress

---

[97] *Gateway*, 983 F.3d at 1258.
[98] *Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816, 824 (2018) (quoting *Corley v. United States*, 556 U.S. 303, 314 (2009)).
[99] *Gateway*, 983 F.3d at 1257.
[100] ECF No. 35-1 at 34-35.
[101] *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 45, 103 S. Ct. 2856, 2867, 77 L. Ed. 2d 443 (1983)(citations omitted).

intended for first-draw PPP loans to have broader eligibility—as evidenced by the "any business concern" language—than second-draw loans, which incorporated the Section 120.110 exclusions. The flaw in this argument is that, if this was Congress' intent, the EAA would not have added a new exception for faith-based businesses with respect to second-draw PPP loans, nor extended that exception alone to *first-draw* loans.[102] Indeed, if Congress intended the "any business concern" clause to be the only eligibility requirement for first-draw PPP loans, it would not have needed to make the faith-based business exception retroactive. Doing so indicates that Congress recognized and ratified the SBA's adoption of certain Section 120.110 exclusions—including the "business of lending" exclusion—for first-draw PPP loans.[103]

Finally, Plaintiffs' (and the Sixth Circuit's) interpretation of the Act's "any business concern" clause ignores the statutory context of the language in the CARES Act. This language appears in a provision of the Act that expands the employee eligibility threshold for PPP loans beyond the employee threshold for certain "small businesses" under the pre-exiting Section 7(a) loan program. Accordingly, the Court agrees with the *Pharaohs* court that this language "simply rais[ed] the employee threshold defining eligibility for small business relief to 500 [employees]" in certain industries instead of creating a single, expansive eligibility requirement that supplants Section 120.110.[104]

In sum, the SBA's decision to apply the exclusions in Section 120.110 to the PPP— including the business of lending exclusion in Section 120.110(b)—did not violate CARES Act. Even if the CARES Act could be deemed ambiguous with respect to the SBA's authority and discretion to adopt this exclusion, the SBA's adoption of the exclusion "is based on a permissible

---

[102] EAA at § 311(c)(2)(providing that "[t]he prohibition on eligibility established by section 120.110(k) … shall not apply to a" first-draw PPP loan).
[103] *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 45.
[104] 990 F.3d at 227-28.

construction of the statute" for the reasons set forth above.[105]  As to those claims, Plaintiffs' motion is DENIED, and Defendants' motion is GRANTED.

### B.  Did the SBA Provide a Reasoned Explanation for Adopting the "Business of Lending" Exclusion in the First IFR?

Plaintiffs next argue that the SBA's adoption of the First IFR was arbitrary and capricious because the SBA did not provide a contemporaneous reasoned explanation for incorporating the Section 120.110 eligibility exclusions into the PPP.[106] Under the "arbitrary and capricious" standard, an agency must show that it "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action."[107] In reviewing an agency's explanation, a court is to consider "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment."[108] In other words, "the agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'"[109] This requirement is "meant to ensure that agencies offer genuine justifications for important decisions, reasons that can be scrutinized by courts and the interested public."[110] Accordingly, the agency must "defend its actions based on the reasons it gave when it acted" rather than "*post hoc* rationalizations."[111]  An agency engages in *post hoc* rationalization when it offers arguments during the course of litigation that are unrelated to any reason given at the time of the action.[112] Although a court "may not provide a reasoned basis for the agency's

---

[105] *Alenco Commc'ns, Inc. v. FCC,* 201 F.3d 608, 619 (5th Cir. 2000) (quoting *Chevron,* 467 U.S. at 843).
[106] ECF No. 24-1 at 24.
[107] *Motor Vehicle Mfr. Ass'n,* 463 U.S. at 43.
[108] *Id.*
[109] *Id.* (quoting *Burlington Truck Lines v. United States,* 371 U.S. 156, 168, 83 S.Ct. 239 (1962)).
[110] *Dep't of Com. v. New York,* —— U.S. ——, 139 S. Ct. 2551, 2575–76 (2019).
[111] *R.J. Reynolds Vapor Co. v. Food & Drug Admin.,* 65 F.4th 182, 189 (5th Cir. 2023) (quoting *DHS v. Regents of the Univ. of Cal.,* —— U.S. ——, 140 S. Ct. 1891, 1909 (2020)).
[112] *DHS,* 140 S. Ct. at 1907-09.

action that the agency itself has not given," a court should "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned."[113]

Neither party has identified any contemporaneous explanation in the administrative record of the SBA's reasons for incorporating the Section 120.110 exclusions in the First IFR. Defendants, however, filed a declaration by Dianna Seaborn, Director of SBA's Office of Financial Assistance in the Office of Capital Access, that explains the reasons why the SBA incorporated Section 120.110 into the First IFR.[114] Seaborn states in her declaration that she was personally involved in preparation of the First IFR, and has personal knowledge of the reasons for the SBA's actions in adopting the Section 120.110 exclusions.[115] Seaborn explains that the SBA considered Congress' directive that the PPP be implemented quickly and that it be implemented under the umbrella of the SBA's existing Section 7(a) program. Seaborn first addresses Congress' mandate that the SBA implement the PPP in a short period of time. She explains that "Congress initially authorized SBA to guarantee an enormous amount in PPP loans, up to $349 billion, by June 30, 2020, a matter of just three months."[116] To meet this deadline "Congress directed SBA, in 15 U.S.C. § 9012, to issue regulations implementing the PPP within just 15 days of the CARES Act's enactment."[117] Given this short timeline, "Congress situated the PPP within the pre-existing infrastructure of SBA's Section 7(a) loan program, while at the same time waiving or streamlining certain Section 7(a) loan-origination requirements for PPP borrowers and lenders."[118] The SBA considered this in crafting the First IFR. [119]

---

[113] *Motor Vehicle Mfr. Ass'n*, 463 U.S. at 44.
[114] ECF No. 35-1 at 41-42.
[115] ECF No. 35-3 at ¶¶ 1-3.
[116] *Id.* at ¶ 6.
[117] ECF No. 35-3 at ¶ 9.
[118] *Id.* at ¶ 7.
[119] *Id.* at ¶ 11-12.

Seaborn further explains that "[w]hen SBA approached the task of drafting the First PPP IFR, it took as its starting point Congress's instruction, in 15 U.S.C. § 636(a)(36)(B), that SBA 'may guarantee [PPP] loans under the same terms, conditions, and processes as [other] loans made under' Section 7(a), '[e]xcept as otherwise provided' by the PPP."[120] Seaborn further explains that "[a]mong the terms and conditions that ordinarily apply to Section 7(a) loans is the SBA's longtime rule codified at 13 C.F.R. § 120.110," and, "[w]ith the exception of the rule against loans to non-profits … the CARES Act did not waive or modify application of any of these eligibility restrictions to the PPP."[121] Accordingly, in implementing the PPP through the First IFR, the SBA focused on the changes to the normal Section 7(a) terms and conditions mandated by the CARES Act—including changes to lending criteria and "developing a streamlined, less time-consuming set of loan-origination procedures"—as opposed to the Section 7(a) terms and conditions that were not changed in the Act.[122] In sum, Seaborn explains that "the First PPP IFR stated that 13 C.F.R. § 120.110 applies to the PPP because it was one of the key Section 7(a) provisions that Congress had not waived or modified for purposes of the PPP, and that SBA did not need to waive or modify at the program's inception … to immediately meet the urgent need of America's small businesses, as Congress had directed."[123]

Plaintiffs first argue that the Seaborn declaration is a "*post hoc* rationalization" that does not provide the "reasoned explanation" required under the APA. Plaintiffs also contend that Seaborn's explanation of the legal basis for the SBA's actions violates the so-called "*Chenery* Rule" for the same reasons. Generally, agency action should be reviewed on the basis of the record before the agency at the time it made its decision. The Supreme Court has cautioned against

---

[120] *Id.* at ¶ 10.
[121] *Id.* at ¶ 14.
[122] *Id.* at ¶ 12.
[123] *Id.* at ¶ 17.

reviewing courts relying solely on "litigation affidavits" that are "merely 'post hoc' rationalizations."[124] However, courts have allowed agency officials who participated in an agency action to explain their actions through affidavits or live testimony if no formal findings were issued by the agency at the time of the action.[125] Here, Seaborn was involved in the drafting process for the First IFR, so she has personal knowledge of the reasons why the SBA adopted the eligibility exclusions in Section 120.110, and the Court may consider her statements.

Moreover, Seaborn's account is consistent with the explanatory statements made by the SBA in the First IFR itself. Specifically, the "Summary" and "Background Information" sections of the First IFR announce SBA's understanding that the CARES Act created the PPP as part of the Section 7(a) loan program—i.e., subject to Section 7(a) restrictions unless explicitly amended, including by implication Section 120.110.[126] Furthermore, Section III(2)(c) of the First IFR ("How do I determine if I am eligible?") states that businesses are ineligible for PPP loans if they are identified in Section 120.110 "and described further in SBA's Standard Operating Procedure (SOP) 50 10, Subpart B, Chapter 2," unless they are non-profit organizations.[127] The version of SOP 50 10 in effect when the First IFR was issued was Version 5(K), which became effective April 1, 2019.[128] In other words, the First IFR provided that eligibility for PPP loans was

---

[124] *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 419 (1971)(citing *Burlington Truck Lines*, 371 U.S. at 168-69 and *SEC v. Chenery Corp.*, 318 U.S. 80, 87, 63 S.Ct. 454, 459, 87 L.Ed. 626 (1943))(*abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 105, 97 S. Ct. 980, 984, 51 L. Ed. 2d 192 (1977)). In *Volpe*, the lower courts relied exclusively on affidavits prepared solely for litigation rather than the administrative record, and the parties presented conflicting affidavits pertaining to the factors considered by the agency. *Id.* The Court held that "we do not believe that in this case judicial review based solely on litigation affidavits was adequate." *Id.* at 409. However, the Court further noted that a reviewing court "may require the administrative officials who participated in the decision to give testimony explaining their action," but that "such inquiry into the mental processes of administrative decisionmakers is usually to be avoided." *Id.* at 420.

[125] *Ensco Offshore Co. v. Salazar,* No. CV 10-1941, 2011 WL 13203198, at *2 (E.D. La. Apr. 26, 2011) (citing *Harris v. United States*, 19 F.3d 1090, 1096 n.7 (5th Cir. 1994); *see also City of Coll. Station v. U.S. Dep't of Agric.*, 395 F. Supp. 2d 495, 500 (S.D. Tex. 2005) (citing, 401 U.S. 402, *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977)).

[126] First IFR, 85 FR 20811-01.

[127] *Id.*

[128] *Lender and Development Company Loan Programs*, U.S. SMALL BUS. ADMIN., https://www.sba.gov/document/sop-50-10-5-lender-development-company-loan-programs (last visited February 9, 2024).

determined in part by standard procedures that had been in place for over a year. The clear import of these provisions is that the SBA included Section 120.110 in the First IFR because the SBA interpreted the CARES Act as creating the PPP as part of the Section 7(a) loan program, thus making PPP loans subject to Section 7(a)'s traditional terms and conditions, including those which address eligibility, unless otherwise stated in the Act. This accords with this Court's statutory analysis, as well as that of the courts in *Pharoahs* and *Gateway*, as described above.

Plaintiffs also argue that Seaborn's explanation for the SBA's action is unreasonable because she is essentially "claiming that [the SBA] was simply too busy" to consider all of the relevant factors and explain its reasoning for adopting the eligibility exclusions in Section 120.110.[129] The Court disagrees. Seaborn points to the relatively short timeline mandated by Congress—15 days for the SBA to issue rules implementing the PPP—but she also points to language placing the PPP under the existing Section 7(a) program and authorizing the SBA to administer the PPP under the "same terms, conditions, and processes" as the Section 7(a) program. She explains that the SBA's focus was to develop rules reflecting the ways in which the CARES Act mandated different treatment for PPP loans versus traditional Section 7(a) loans, and that the SBA made this the focus of its efforts in order to meet the short timeline mandated by Congress.[130]

In sum, considering the record as a whole, including Seaborn's declaration, the Court finds that the SBA has provided and did provide a reasoned explanation for its decision to incorporate the eligibility exclusions—including the "business of lending" exclusion—from Section 120.110 into the PPP. As to those claims, Plaintiffs' motion is DENIED, and Defendants' motion is GRANTED.

### C. Did the SBA Act Arbitrarily and Capriciously by Creating Exceptions to the PPP's Application of Section 120.110 After Issuing the First IFR?

---

[129] ECF No. 38 at 2, 16.
[130] ECF No. 35-3 at ¶ 14.

Plaintiffs next argue that the SBA acted arbitrarily and capriciously when it made two additional categories of business eligible for PPP loans in the Second IFR, but did not create an additional exception for business concerns "in the business of lending."[131] Section 120.110 makes more than ten classes of business ineligible for Section 7(a) loans, including: non-profit organizations, financial businesses, government-owned entities (other than those owned or controlled by Native American tribes), businesses deriving more than one-third of revenue from legal gambling, pyramid sales plans, and private clubs.[132] As discussed above, the First IFR provided that Section 120.110 applied with equal force to PPP loans, except as amended by statute (which excepted non-profit organizations from exclusion under Section 120.110). The Second IFR created two additional exceptions to Section 120.110 within the context of PPP loans. First, hospitals which would normally be eligible for PPP loans would not be rendered ineligible if owned by government entities, so long as less than 50% of their funding came from government sources other than Medicaid.[133] According to the Second IFR, the SBA Administrator determined that this exception was "appropriate to effectuate the purposes of the CARES Act."[134] Next, the SBA stated that businesses that received more than one-third of revenue from legal gambling would not be ineligible for PPP loans.[135] The Second IFR stated the SBA Administrator concluded that an exception for gambling concerns would be "more consistent with the policy aim of making PPP loans available to a broad segment of U.S. businesses."[136]

Plaintiffs argue that the reasons given for these exceptions would have also supported creating a carve-out for financial businesses, so it was arbitrary and capricious for the SBA not to extend the exceptions to financial businesses. According to Plaintiffs, an agency must treat

---

[131] ECF No. 24-1 at 25-27.
[132] 13 C.F.R. § 120.110.
[133] Second IFR at III(2)(c).
[134] *Id.*
[135] *Id.* at III(2)(d).
[136] *Id.*

similarly situated businesses similarly, and the business categories listed in Section 120.110 are "similarly situated" by virtue of being so listed, and by virtue of being part of the class "U.S. businesses." Therefore, according to Plaintiffs, when the SBA created an exception for any business category or sub-category subject to an exclusion under Section 120.110, it had to except every category subject to that provision. This argument fails for at least two reasons.

First, Plaintiffs are not challenging the new exceptions created by the Second IFR as arbitrary and capricious, but instead challenge the SBA's *inaction* in not adding an *additional* exception in the Second IFR for lending institutions. The flaw in this argument is that Plaintiffs never requested a rulemaking to modify or amend the First IFR with respect to the exclusion of lending institutions and, as a result, there is no decision by the SBA to challenge. As the Court has previously ruled, the CARES Act grants the SBA authority and discretion to implement the PPP under the same terms, conditions, and processes as the Section 7(a) loan program, including the Section 120.110 eligibility exclusions. The fact that the SBA decided to modify certain exceptions in Second IFR does not require the agency to *sua sponte* address every possible modification or change to the Section 120.110 exclusions for the PPP.[137] The proper course was for Plaintiffs to request a rulemaking to add the exception and, if denied, to appeal from that denial.[138]

---

[137] *See Mobil Oil Expl. & Producing Se. Inc. v. United Distribution Companies*, 498 U.S. 211, 214, 111 S. Ct. 615, 627, 112 L. Ed. 2d 636 (1991)("An agency enjoys broad discretion in determining how best to handle related, yet discrete, issues in terms of procedures and priorities … This applies even where the initial solution to one problem has adverse consequences for another area that the agency was addressing.")(citations omitted).

[138] *Auer v. Robbins*, 519 U.S. 452, 458–59 (1997). As the Supreme Court explained in *Auer*:

> A court may certainly be asked by parties in respondents' position to disregard an agency regulation that is contrary to the substantive requirements of the law, or one that appears on the public record to have been issued in violation of procedural prerequisites, such as the "notice and comment" requirements of the APA, 5 U.S.C. § 553. But where, as here, the claim is not that the regulation is substantively unlawful, or even that it violates a clear procedural prerequisite, but rather that it was "arbitrary" and "capricious" not to conduct amendatory rulemaking (which might well have resulted in no change), there is no basis for the court to set aside the agency's action prior to any application for relief addressed to the agency itself. The proper procedure for pursuit of respondents' grievance is set forth explicitly in the APA: a petition to the agency for rulemaking, § 553(e), denial of which must be justified by a statement of reasons, § 555(e), and can be appealed to the courts, §§ 702, 706.

Second, Plaintiffs' discriminatory treatment argument does not support the relief they request. Plaintiffs object to SBA's creation of exceptions for certain hospitals and gambling concerns, but not for financial businesses, as arbitrarily and capriciously treating similarly situated business concerns differently. It is true that, "as a general matter, an agency cannot treat similarly situated entities differently unless it supports the disparate treatment with a reasoned explanation and substantial evidence in the record."[139] However, Plaintiffs have not explained how the financial business sector is similarly situated to hospitals and gambling concerns, beyond all three being listed in Section 120.110. Plaintiffs contend that the SBA's explanation for the exceptions—that the exceptions comport with "the policy aim of making PPP loans available to a broad segment of U.S. businesses"—applies equally to lenders. However, this argument would apply equally to other business sectors excluded from the PPP under the First IFR and Section 120.110. As noted above, agencies are not generally required to address all possible related issues at once.[140]

Finally, the cases cited by Plaintiffs are factually distinguishable and do not support their "discriminatory treatment" argument based on the facts of the present case. For example, in *County of Los Angeles v. Shalala*,[141] the court addressed the Department of Health and Human Services' conflicting use of data in calculating Medicare payments, not whether categories of businesses listed in a regulation are similarly situated for purposes of changes to that regulation. There, the court held that while the Secretary had discretion to use a data set to "make an across-the-board adjustment to variables that are ordinarily determined on a case-by-case basis … she must be prepared to explain why she cannot also use that data to make a similar adjustment to variables that are also typically calculated on an individual basis."[142] Similarly, in *Freeman Eng'g Assocs.*

---

[139] *Health All. Hosps., Inc. v. Burwell*, 130 F. Supp. 3d 277, 302 (D.D.C. 2015)(citations, quotations, and alterations omitted).
[140] *Mobil Oil*, 498 U.S. at 214.
[141] 192 F.3d 1005 (D.C. Cir. 1999)
[142] *Id.* at 1023.

*v. FCC*,[143] the court concluded that the Federal Communications Commission impermissibly treated similar companies disparately when it granted a preference to one company but not another, based solely on the timing of their development of innovative technologies. While both companies began designing similar technology before the preference program was introduced, one company was denied a preference on the ground that its design work began before the program was created, and the other was not. In the present case, the SBA never explicitly made a distinction among hospitals, gambling concerns, and business concerns in the "business of lending" when it issued the Second IFR. Again, the fact that the SBA decided to eliminate one eligibility exclusion in the Second IFR did not require it to consider whether to eliminate any of the remaining exceptions.[144]

In short, Plaintiffs cite no authority that government-owned hospitals are "similarly situated" to financial businesses under Section 120.110, that SBA's granting an exception to one business category created an affirmative obligation to revisit the question of whether to grant an

---

[143] 103 F.3d 169, 178 (D.C. Cir. 1997).

[144] The other cases cited by Plaintiffs are similarly distinguishable:

- *Petroleum Commc'ns, Inc. v. FCC*, 22 F.3d 1164 (D.C. Cir. 1994) did not reach the question of disparate treatment by the relevant agency because the plaintiffs failed to exhaust the available administrative remedies.

- In *Local 777, Democratic Union Org. Comm. v. NLRB*, 603 F.2d 862 (D.C. Cir. 1978), the court was confronted with whether the National Labor Relations Board had treated cab drivers operating under a lease program differently from drivers operating under a commission program. Whether the drivers needed to be treated similarly turned on the specific facts of each program and the drivers' relations to the cab companies.

- In *Indep. Turtle Farmers of Louisiana, Inc. v. United States*, 703 F. Supp. 2d 604, 618 (W.D. La. 2010), the Food and Drug Administration admitted that many pets and food products had the potential to be contaminated with Salmonella bacteria, but only prohibited the sale of turtles on that basis. Because the FDA offered no reason why the admittedly similar entities were treated differently, that discrimination was arbitrary and capricious. Again, here, the SBA never explicitly made a distinction among hospitals, gambling concerns, and business concerns in the "business of lending" when it issued the Second IFR, nor did it have to.

- Finally, in *In re Skefos*, No. 19-29718-L, 2020 WL 2893413 (Bankr. W.D. Tenn. June 2, 2020), the Bankruptcy Court found that the SBA discriminated arbitrarily when it made businesses whose owners were bankruptcy debtors ineligible for PPP loans. The court found not only that the regulation violated 11 U.S.C. § 525(a), it also contradicted prior SBA guidance which stated that creditworthiness would not be considered for PPP loans. Again, the court's analysis is not relevant to the SBA's discretion to modify the categories of excluded businesses in Section 120.110.

exception to other categories, or that SBA had an obligation to issue reasons for not extending such exceptions. As to those claims, Plaintiffs' motion is DENIED, and Defendants' motion is GRANTED.

### D. Did The SBA Act Arbitrarily And Capriciously By Forgiving PPP Loans to Similarly Situated Lenders?

Plaintiffs next contend that the SBA acted arbitrarily and capriciously by denying their loan forgiveness applications yet granting the forgiveness applications of other similarly situated financial businesses.[145] As noted above, an agency must give a "'reasoned analysis' to justify disparate treatment of regulated parties that seem similarly situated."[146] If such disparate treatment is not supported with a "reasoned explanation and substantial evidence in the record," the treatment is arbitrary and capricious and violates the APA.[147] Plaintiffs have provided data purportedly gathered from the SBA allegedly showing that a number of financial businesses received PPP loan forgiveness, while the SBA denied forgiveness to the Plaintiffs on the grounds of their being financial businesses.[148]

Specifically, Plaintiffs offer the analysis in the Richey Declaration as evidence of this disparate treatment.[149] Richey explains that they reviewed publicly available SBA information about PPP loans and forgiveness.[150] Richey filtered the information to examine only three

---

[145] ECF No. 24-1 at 27-29.

[146] *ANR Storage Co. v. FERC*, 904 F.3d 1020, 1024 (D.C. Cir. 2018)(quoting *W. Deptford Energy, LLC v. FERC*, 766 F.3d 10, 21 (D.C. Cir. 2014)).

[147] *Agility Pub. Warehousing Co. K.S.C.P. v. U.S. Dep't of Def.*, 246 F. Supp. 3d 34, 50 (D.D.C. 2017)(quoting *Anna Jacques Hosp. v. Sebelius*, 583 F.3d 1, 7 (D.C. Cir. 2009)).

[148] *Id.*

[149] *Id.*; ECF No. 27.

[150] ECF No. 27 at 2-3.

categories of borrower—Consumer Lender, Sales Finance Company, and Real Estate Credit.[151]
Within those categories, Richey calculated that a total number of 20,175 businesses received PPP
loans, with 11,009 (55%) receiving loan forgiveness.[152] Pursuant to SBA SOP 50 10 5(K), Subpart
B, Chapter 2, § III(A)(2)(b)(iii), mortgage service companies were eligible for Section 7(a) loans
so long as they were either "primarily engaged in the business of servicing loans" or disbursed and
sold loans within fourteen (14) calendar days of the loan's closing; companies that "ma[d]e loans
and h[e]ld them in their portfolio" were not eligible. Richey opined that for Real Estate Credit
businesses—i.e., "mortgage companies"—"it is not possible for many if not most of these
companies to consummate the sale of the majority of loans they originate, either in number or
principal amount, within 14 days after the date of loan closing."[153] Therefore, Richey concluded
that SBA either granted "a blanket exemption from its PPP loan guidance for all mortgage
companies" or granted forgiveness to mortgage companies based on the day they agreed to sell
mortgages, rather than the date mortgages were consummated.[154]

Defendants contend the Richey Declaration's analysis is flawed because it (1) misconstrues
the SBA loan forgiveness process, and (2) assumes erroneously that Plaintiffs are situated similarly
to the other entities addressed in the SBA data.[155] Defendants assert that, because the SBA was
required to originate loans with all possible haste and the SBA lacked the resources to thoroughly
vet every PPP loan requested, those loans were only evaluated—including for eligibility—at the
forgiveness stage.[156] The initial evaluation was automated, and loans were reviewed for indications
they were anomalous, given to ineligible recipients, or otherwise non-compliant with the PPP.

---

[151] Richey does not explain the choice to work with only these three categories of business, e.g., because all potential financial businesses fall into one of these categories.
[152] ECF No. 27 at ¶ 11.
[153] ECF No. 27 at 3-4.
[154] *Id.*
[155] ECF No. 35-1 at 45.
[156] *Id.*

After the automated review was completed, SBA conducted a manual review of (1) the loans identified by the automated process as potentially non-compliant, (2) a statistical sample of all loans, and (3) loans for which SBA had received other information suggesting non-compliance.[157] Loans not falling into these three categories were forgiven without further evaluation, but loans chosen for manual review were evaluated for whether they were eligible for forgiveness or not.[158]

According to the Andrews Declaration offered by Defendants, the Richey Declaration asserts that approximately 11,000 forgiveness requests by three categories of financial business were granted, but Plaintiffs' requests were not. The Andrews Declaration counters that of those nearly 11,000 requests, approximately 10,000 did not undergo manual review—i.e., they were forgiven automatically after the automated review process failed to reveal indicia of non-compliance with PPP restrictions.[159] Defendants argue that, because each of the requests by the individual business Plaintiffs was subjected to manual review, Plaintiffs are not similarly situated to the financial businesses whose forgiveness requests were only subjected to automated review.[160]

Defendants further argue that "it cannot be assumed" that Plaintiffs are similarly situated to the approximately 1,000 other financial businesses whose loans were forgiven after manual review, because some businesses who are engaged in lending are eligible for Section 7(a)—and thus PPP—loans.[161] For example, businesses who engage in only occasional lending are eligible (because Section 120.110(b) only bars businesses "primarily" engaged in lending), as are mortgage lenders who sell the loans they originate within fourteen (14) days.[162] Andrews does not assert that each of the approximately 1,000 forgiven loans to financial businesses *does* fit into either of these exceptions (or any others), only that they *could*, so the Richey Declaration is not justified in

---

[157] *Id.* at 45-46.
[158] *Id.*
[159] ECF No. 35-1 at 46 (Defendants' Motion)
[160] *Id.*
[161] *Id.*
[162] *Id.*

concluding, only on the basis of the data attached thereto, that the SBA's application of forgiveness rules has been inconsistent.[163]

In short, the parties offer conflicting expert testimony on the question of whether the SBA denied Plaintiffs' loan forgiveness requests but granted those of other similarly situated financial businesses. These experts also disagree whether such a determination can reliably be made on the basis of the evidence adduced by Plaintiffs. At the summary judgment stage, the Court may not engage in credibility determinations,[164] and "dueling theories of ostensibly credible experts create a triable issue of fact."[165] Accordingly, there are genuine issues of material fact regarding whether the SBA arbitrarily and capriciously declined to forgive the Plaintiffs' requests for forgiveness while granting the requests of similarly situated financial businesses. The parties' motions are, therefore, DENIED as to those claims.

## V.
### THE "NONDELEGATION" AND "MAJOR QUESTIONS" DOCTRINES

Plaintiffs next argue that, to the extent the CARES Act authorizes the SBA to adopt eligibility restrictions, the Act violates the "nondelegation doctrine." The nondelegation doctrine is grounded on the principle that Article I of the Constitution vests legislative power in Congress, and that Congress may not then constitutionally delegate that power to another branch.[166] Here, plaintiffs contend that the CARES Act unconstitutionally delegates legislative power to the SBA, an executive branch agency. Not all delegations of legislative power are unconstitutional. A delegation of legislative power to an executive agency is constitutional if Congress incorporates

---

[163] ECF No. 35-4 at ¶ 30 (Andrews Declaration).

[164] *Quorum Health Resources,* 308 F.3d at 458.

[165] *Lalumandier v. State Farm Mut. Auto. Ins. Co.*, No. 3:13-00426-JWD-RLB, 2016 WL 3211515, at *3 (M.D. La. Jan. 28, 2016)(collecting cases from other circuits); *see also King v. Perry*, No. CIV.A. 07-0625, 2009 WL 2143757, at *4 (W.D. La. July 17, 2009).

[166] *Gundy v. United States*, 600 U.S. ---, 139 S. Ct. 2116, 2123–24 (2019); *Big Time Vapes, Inc. v. Food & Drug Admin.*, 963 F.3d 436, 441–43 (5th Cir. 2020).

in the statute "an intelligible principle" to guide the agency's actions under that statute.[167] The Supreme Court has held that it is "constitutionally sufficient if Congress clearly delineates the general policy, the public agency which is to apply it, and the boundaries of the delegated authority."[168] Accordingly, a court must construe "the challenged statute to figure out what task it delegates and what instructions it provides."[169]

The CARES Act's PPP provisions are constitutional under these standards. The CARES Act specifically directs the SBA to implement the PPP under the SBA's pre-existing Section 7(a) loan program and authorizes the SBA to offer PPP loans "under the same terms, conditions, as processes as a loan made under [Section 7(a)]."[170] Since Congress was legislating against the backdrop of an existing statutory and regulatory scheme, it can be presumed that Congress was aware of the specific rules and regulations that the SBA had promulgated for the Section 7(a) program when it directed the SBA to implement the PPP under the umbrella of the Section 7(a) program.[171] Moreover, Congress directed certain changes to the terms, conditions, and processes of the original Section 7(a) program with respect to the PPP. In sum, the Court finds that Congress provided the SBA with sufficient direction as to how to exercise its discretion in implementing the PPP and thus did not violate the nondelegation doctrine.

Plaintiffs further argue that the SBA's adoption of the "business of lending" exclusion in the First IFR violates the "major questions doctrine." The Supreme Court recently explained this doctrine in the context of an agency's authority to promulgate regulations under a statutory scheme:

> Where the statute at issue is one that confers authority upon an administrative agency, that inquiry [i.e. the scope of the agency's authority] must be "shaped, at

---

[167] *Gundy,* 139 S. Ct. at 2123–24; *Big Time Vapes, Inc.,* 963 F.3d 441–43.
[168] *Big Time Vapes,* 963 F.3d at 442 (quoting *Am. Power & Light Co. v. SEC,* 329 U.S. 90, 105, 67 S.Ct. 133, 91 L.Ed. 103 (1946)).
[169] *Gundy,* 139 S. Ct. at 2123–24.
[170] CARES Act, § 1102, 134 Stat at 287; 15 U.S.C. § 636(a)(36)(B).
[171] *Pharaohs GC, Inc.,* 990 F.3d at 227.

least in some measure, by the nature of the question presented"—whether Congress in fact meant to confer the power the agency has asserted. *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 159, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000). In the ordinary case, that context has no great effect on the appropriate analysis. Nonetheless, our precedent teaches that there are "extraordinary cases" that call for a different approach—cases in which the "history and the breadth of the authority that [the agency] has asserted," and the "economic and political significance" of that assertion, provide a "reason to hesitate before concluding that Congress" meant to confer such authority. *Id.*, at 159–160, 120 S.Ct. 1291.[172]

Here, however, Congress expressly granted the SBA authority to implement the PPP under the pre-existing Section 7(a) loan program and granted the SBA discretion to administer the PPP under the same terms, conditions, and processes as the Section 7(a) program. As the Court previously explained, this language supports the authority of the SBA to adopt the eligibility criteria in Section 120.110, including the "business of lending" exclusion. It is undeniable that the PPP was enacted to confront an unprecedented economic crisis resulting from the COVID-19 pandemic, and that the CARES Act addressed a matter of national importance. However, the SBA did not assume powers that were beyond what Congress granted in the CARES Act merely by adopting the eligibility exclusions of Section 120.110 in the First IFR; nor do these eligibility criteria amount to "major questions" that would trigger this limitation on agency power in light of the types of cases where the Supreme Court has applied the doctrine. For example, the Supreme Court has applied the doctrine to an attempt by an agency to regulate new categories of products not specifically covered by Congressional statute.[173] The doctrine was also applied to a case where an agency essentially decided "whether an industry will be entirely, or even substantially, rate-regulated" based only on the agency's statutory authority to modify rate-filing requirements.[174] In

---

[172] *W. Virginia v. Env't Prot. Agency*, 597 U.S. 697, 721 (2022).

[173] *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 160 (2000) (Court rejected the FDA's attempt to regulate tobacco products based on the agency's authority to regulate "drugs" and "devices.").

[174] *MCI Telecommunications Corp. v. American Telephone & Telegraph Co.*, 512 U.S. 218 (1994) (Court rejected the agency's view that, because the Act gave it the discretion to "modify any requirement" imposed under the statute, it therefore possessed the authority to render voluntary the otherwise mandatory requirement that long distance carriers file their rates).

contrast, here, the SBA is not assuming broad powers that were not expressly granted in the CARES Act. Rather, it was following Congress' directive to implement the PPP under the umbrella of the pre-existing Section 7(a) program.

In sum, the SBA's First IFR and its adoption of the "business of lending" exclusion does not violate the nondelegation doctrine or the major questions doctrine.

## VI.
### CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the Plaintiffs' Motion for Summary Judgment [ECF No. 24] is DENIED.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment [ECF No. 35] is GRANTED IN PART as follows:

1) The claims of Plaintiff VAC are DISMISSED WITHOUT PREJUDICE to being refiled once a final OHA decision has been rendered as to VAC's appeal.

2) Any claims against Secretary Yellen are DISMISSED WITH PREJUDICE.

3) Any claims for injunctive relief against the SBA and/or its Administrator are DISMISSED WITH PREJUDICE.

4) Plaintiffs' claims that SBA's promulgation of the First IFR violated the CARES Act by incorporating the "business of lending" exclusion into the PPP are DISMISSED WITH PREJUDICE.

5) Plaintiffs' claims that SBA's promulgation of the First IFR violated the APA by failing to provide a reasoned explanation for adopting the "business of lending" exclusion into the PPP are DISMISSED WITH PREJUDICE.

6) Plaintiffs' claims that SBA's promulgation of the Second IFR violated the APA by creating exceptions to the Section 120.110 eligibility regulations to PPP loans

35

without extending those regulations to financial businesses DISMISSED WITH PREJUDICE.

7) Plaintiffs' claims that SBA's promulgation of the First IFR violated the nondelegation doctrine are DISMISSED WITH PREJUDICE.

8) Plaintiffs' claims that SBA's promulgation of the First IFR violated the major questions doctrine are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Defendants' Motion is DENIED IN PART as to Plaintiffs' claims that SBA acted arbitrarily and capriciously by denying PPP loan forgiveness to the individual business Plaintiffs while granting it to other financial businesses.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Oral Argument [ECF No. 51] is DENIED AS MOOT.

THUS DONE AND SIGNED in Chambers on the 22nd day of February, 2024

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE

36